UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARLO J. BLOCKER,

                             Petitioner,

      -vs-

SUPERINTENDENT HAROLD GRAHAM,

                           Respondent.

No. 6:17-cv-06648-CJS
DECISION AND ORDER

**APPEARANCES**

For Petitioner:                      Marlo J. Blocker, *Pro Se*
                                              DIN 10-B-0352
                                              Auburn Correctional Facility
                                              Box 618
                                              Auburn, New York 13021

For Respondent:               Michelle Maerov, A.A.G.
                                              Paul B. Lyons, A.A.G.
                                              New York State Attorney General's Office
                                              28 Liberty Street
                                              New York, New York 10005

**INTRODUCTION**

Marlo J. Blocker ("Blocker" or "Petitioner"), proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Blocker is in Respondent's custody pursuant to a judgment entered on January 13, 2010, in New York State, Monroe County Court (Geraci, J.), following a jury verdict convicting him of several weapons-possession offenses. For the reasons discussed herein, the request for a writ of a habeas corpus is denied.

**BACKGROUND**

**I.      Pre-Trial Proceedings**

The conviction at issue here stems from a traffic stop of Blocker's car on January 2, 2009, which resulted in the seizure of a sawed-off shotgun and a handgun. Blocker, along with his two passengers, Craig Madison ("Madison") and Freddie Collins ("Collins"), were indicted as accessories with four counts of second-degree criminal possession of a weapon (New York Penal Law ("P.L.") §§ 265.03(1)(b), (3)) for possessing the handgun and shotgun with intent to use them unlawfully against another person, and for possessing the weapons outside a home or business; and three counts of third-degree criminal possession of a weapon (*id.* §§ 265.02(1), (3)) for knowingly possessing the handgun and the shotgun, and for possessing a defaced shotgun. As owner of the vehicle, Blocker was charged with unlawful window-tinting (New York Vehicle & Traffic Law § 375). *See* SR.010-024.[1]

On June 5, 2009, and June 16, 2009, Monroe County Court Judge Frank P. Geraci, Jr. ("trial court") held an evidentiary hearing on the three defendants' motions challenging the legality of the traffic stop, arrests, search of the car, and seizure of the shotgun and handgun. The trial court denied the suppression motions in full at the end of the second hearing. *See* H2. 63–72.[2] In particular, the trial court ruled that the traffic stop was proper, H2. 70, and the glove box was properly searched. H2. 71.

---

[1] Citations to "SR. #" refer to the Bates-stamped page numbers in the lower right corner of the state court records filed electronically by Respondent at ECF No. 21-2.

[2] Citations to "H1. #" and "H2. #" refer to pages of the June 5, 2009, and June 16, 2009, hearing transcripts, respectively. The two transcripts are separately paginated. They are docketed at ECF No. 21-3, pages 14 to 244. Citations to "Tr. #" refer to pages of the trial transcript, docketed at ECF No. 21-3, pages 521 to 1023. Citations to "S. #" refer to pages of the sentencing transcript, docketed at ECF No. 21-3, pages 1024 to 1058. Unless otherwise indicated, when the Court refers to page numbers, it will be to the page numbers

A week later, Madison pleaded guilty to the indictment in exchange for a determinate sentence of seven years' imprisonment plus five years' post-release supervision. Tr. 364. Blocker and Collins proceeded to a joint jury trial in October 2009.

II.    **Trial**

   A.  **The People's Case**

On January 2, 2009, at approximately 12:01 a.m., Officers Thomas Luciano ("Luciano"), Aaron Wilcox ("Wilcox"), and Bradley Pike ("Pike") of the Rochester Police Department ("RPD") Tactical Unit were driving south on Conkey Avenue in separate marked patrol cars. The officers explained that they had just cleared an unrelated report of "shots fired." Tr. 219–21, 240, 249–50, 261, 300–01. Luciano, in the lead position, testified that he stopped at the four-way stop at Conkey and Clifford Avenues and then turned left onto Clifford, heading east. Tr. 221.

As Luciano turned, he observed a black Ford Taurus station wagon travelling westbound on Clifford Avenue as it pulled up to the stop sign at Conkey Avenue. Tr. 221, 247. According to Luciano, the station wagon's side and rear windows were tinted so darkly he could barely see through them. Tr. 221, 232. Suspecting a window-tinting violation, Luciano radioed Wilcox and Pike of his intention to stop the station wagon. Luciano said that he activated his emergency lights, drove past the wagon, parked his patrol car in the eastbound lane, and walked toward the driver's side of the station wagon. Tr. 221–22.

---

provided by the parties or indicated on the original document, rather than the pagination automatically generated by CM/ECF.

Wilcox, who was next in line, testified that he parked in the intersection, activated his emergency lights, and focused a spotlight on the station wagon's un-tinted windshield, illuminating the interior. Tr. 301, 304.

Pike testified that after parking his car on Conkey Avenue, he approached the Ford Taurus from the front, on the passenger's side. Tr. 250, 262–63. Pike related that he saw the front-seat passenger, later identified as Madison, "bending forward, he was seat-belted in, and [Pike] could see his back coming away from the seat and he was leaning forward, possibly grabbing something or stashing something." Tr. 250–52, 262–63. According to Pike, Madison's "shoulders [were] moving away from the seat bending down, forward, possibly grabbing a weapon or trying to conceal one." Tr. 263. Pike testified that he alerted the other officers by yelling, "he's reaching, he's reaching!" Tr. 251–52.

Pike said he then ran up to the front passenger's-side door but found his view obstructed by the tinting on the side windows. Tr. 251–52, 264. Pike testified that when he opened up the passenger's-side door and trained his flashlight on Madison, he "immediately noticed that [Madison's] hands were close together, his legs were close, tight; his hands were palms down. It appeared that he was either covering something or holding something." Tr. 252, 264. Pike said that he observed the "slide" of a shotgun, which was "resting against the seat right between [Madison's] legs." Tr. 252, 257, 264, 268.

Pike testified that he yelled, "gun, gun, gun" while drawing his weapon and grabbing the shotgun. Tr. 252–53. Luciano testified that, after hearing Pike yell, he pointed his gun at Blocker, who was in the driver's seat. Tr. 222–23, 233–36. Luciano stated that he first noticed the shotgun when he observed Pike reach between Madison's

legs and remove it. Tr. 235, 239, 244–45. Luciano described the shotgun as lying "between [Madison's] knees." Tr. 243–44.

Pike testified that after grabbing the shotgun, he arrested Madison, placed him in handcuffs, searched him, and recovered the following items from his pockets: three live rounds of 20-gauge shotgun ammunition, a camouflage-patterned neoprene face mask, and gloves. Tr. 254–57, 265–66. Luciano recounted that his search of Blocker yielded no contraband but he discovered that the Taurus was registered to Blocker. Tr. 225, 236–37, 241.

Responding officer Matt Klein ("Klein") testified that he searched the backseat passenger, later identified as Collins, who was wearing a "level 1 bullet-proof vest" with "a trauma plate" under his clothing. Tr. 288–89.

Since the car had to be towed, Luciano testified that the police first searched it for personal property pursuant to RPD policy. Tr. 225–26. Officer Nicholas Romeo ("Romeo") arrived and conducted the search while the car was still running. When he opened the glove box, he found a black handgun. Tr. 275–76. Luciano and Pike testified that the glove box was directly in front of where Madison had been sitting. Tr. 239–40, 263, 270.

Police technician Richard Martin ("Martin") testified that the shotgun contained three live rounds of ammunition in the magazine and one live round in the chamber; the handgun had eight live rounds in the magazine. Tr. 314–17. Fingerprint testing of the handgun and shells yielded no results. Tr. 317, 330–31.

Firearms examiner Eric Freemesser ("Freemesser") testified that both the sawed-off shotgun and the handgun were operable, and that the shotgun's serial number had been intentionally scratched off. Tr. 339–40, 342, 347. Freemesser stated that though he

recovered the shotgun's serial number, he could not determine ownership of either weapon. Tr. 349. According to Freemesser's measurements, the overall length of the shotgun was 25 inches and the barrel-length was 14 inches. Tr. 343.

### B.  The Defense Case

Blocker's theory of the case was that the shotgun and the handgun belonged to the front seat passenger, Madison, and that Blocker's only connection to Madison was that he had agreed to give Collins and Madison a ride. Tr. 215–16. In support of this theory, Blocker's attorney subpoenaed Madison to testify at trial. Tr. 7.

Just prior to taking the stand, Madison announced that he would invoke his Fifth Amendment right against self-incrimination. Tr. 363–69, 372–74. Although this prevented Madison from being called to testify, the trial court ruled that a portion of Madison's plea colloquy could be admitted into evidence as a statement against penal interest. Tr. 373– 74, 377–92. The following excerpt from Madison's plea colloquy was read into the record:

> Q.    While you were in that motor vehicle, did you possess a sawed-off shotgun, a 20-gauge sawed-off shotgun?
> A.    Yes.
> Q.    And did you know that that gun was loaded at that time?
> A.    Yes.
> Q.    And you knew that was less than 26 inches, the shotgun, correct?
> A.    Yes.
> Q.    Were you also in possession of a loaded handgun that was in the glove compartment?
> A.    Yes.
> Q.    And that was a 9-millimeter pistol, correct?
> A.    Yes.
> Q.    And you're aware that the handgun was there?
> A.    Yes.
> Q.    And you could have used it if you wanted to?
> A.    Yes.

Tr. 405–06.

### C.  The Verdict

The jury returned a verdict on October 22, 2009, acquitting Blocker on count four (third-degree criminal possession of a weapon on the theory that the sawed-off shotgun was defaced) and convicting him on the remaining counts.[3]

### D.  The Motion to Set Aside the Verdict

On December 2, 2009, the parties appeared before the trial court. At that time, trial counsel asked for an adjournment so that Blocker could file a motion to set aside the verdict. On January 10, 2010, trial counsel submitted a motion pursuant to New York Criminal Procedure Law ("C.P.L.") § 330.30(1) and (3), attaching an affidavit signed by Blocker, SR. 63–65, and a sworn statement by Mizael Rosario ("Rosario") dated October 28, 2009, SR. 66–67, who allegedly observed the traffic stop of Blocker's vehicle.

Among other things, Blocker's affidavit argued that certain alleged inconsistencies in the police officers' testimony rendered application of the automobile presumption incredible. Rosario's affidavit recounted his observations of a white unmarked vehicle which drove up quickly behind Blocker's vehicle and pulled in so closely behind him that there was "no way for the Taurus to move any direction." It appeared to Rosario that the white vehicle was involved with the police in stopping the Taurus, because the officer who was at the front "seemed to give the white car some type of signal." Rosario explained that the officer "put his thumb in the air," and then "the white car back [sic] up real fast and left." *Id.*

---

[3] Collins was convicted of the same weapons charges and as sentenced to an aggregate nine-year determinate term of imprisonment plus five years of post-release supervision. His conviction was affirmed on direct appeal. *People v. Collins*, 105 A.D.3d 1378 (4th Dep't), *lv. denied*, 21 N.Y.3d 1003 (2013).

### E.  Sentencing

Sentencing was held on January 13, 2010. At the start of the hearing, the trial court heard argument on the C.P.L. § 330.30 motion. S. 2–9. The trial court found that the motion had "no merit to it whatsoever." S. 9.

The trial court then sentenced Blocker as a second felony offender to a twelve-year determinate term with five years' post-release supervision on each of the four counts of second-degree criminal possession of a weapon. S. 25–26. On each of the two counts of third-degree criminal possession of a weapon, the trial court sentenced Blocker to an indeterminate term of three and one-half to seven years' imprisonment. S. 26. All sentences were set to run concurrently. *Id.* The trial court conditionally discharged the traffic infraction. *Id.*

### III.    Direct Appeal

Represented by new counsel, Blocker appealed to the Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division"). Blocker argued that:  (1) trial counsel was ineffective for failing to move to suppress the guns seized by the police, failing to move for a separate trial from Collins, failing to investigate the witness (Rosario) he produced after trial, failing to follow up on his subpoena for 911 call recordings, and failing to object to prosecutorial misconduct during opening statements, closing statements, and during the police officers' direct examinations; (2) the seizure of the handgun violated his Fourth Amendment rights because it was an invalid inventory search; (3) the trial court erred in instructing the jury on accessorial liability under P.L. § 20.00 because there was no proof upon which a jury could find that Blocker solicited, requested, commanded, importuned or intentionally aided the person who actually

committed the illegal act; and (4) the verdicts regarding both the handgun and shotgun were against the weight of the evidence.  SR. 093–119.

On October 2, 2015, the Appellate Division unanimously affirmed the conviction. *People v. Blocker*, 132 A.D.3d 1287 (4th Dep't 2015). The New York Court of Appeals denied leave to appeal on April 22, 2016. *People v. Blocker*,  27 N.Y.3d 992 (2016).

## IV.    The Federal Habeas Proceeding

Blocker commenced this habeas proceeding by filing a *pro se* Petition, ECF No. 1, reasserting the arguments made in appellate counsel's brief on direct appeal. *See id.* at 3-10, ¶ 12 (incorporating grounds raised on direct appeal).

Respondent filed a Memorandum of Law in Opposition, ECF No. 20; and a Response, ECF No. 21, attaching the state court records and trial transcripts, ECF Nos. 21-1 through 21-3. Respondent argues that the Petition is untimely; that Ground One asserting ineffective assistance of trial counsel is partially unexhausted and entirely meritless; that federal habeas review is unavailable for Grounds Two and Four; and that Ground Three is unexhausted but must be deemed exhausted and procedurally defaulted and is, in any event, without merit.

Blocker filed a Reply contesting Respondent's timeliness argument, asserting that his claims are cognizable and meritorious, and arguing that the procedural default should be excused because he is actually innocent. *See* ECF No. 30.

## DISCUSSION

## I.    Timeliness

Respondent contends that that the Petition is untimely under 28 U.S.C. § 2244(d)(1)(A) because it was filed more than one year after Blocker's conviction became

final on July 21, 2017. Respondent's argument involves interpreting the last sentence of Rule 3(d) of the Rules Governing Section 2254 Cases in the District Courts, which provides as follows:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that firstclass postage has been prepaid.

Rules Governing § 2254 Cases in the District Courts, Rule 3(d), 28 U.S.C. *foll.* § 2254. According to Respondent, Habeas Rule 3(d) "expressly requires petitioners to file a declaration or notarized statement that 'set[s] forth the date of deposit and state[s] that first-class postage has been prepaid.'" ECF No. 20 at 23 (quoting Rules Governing § 2254 Cases in the District Courts, Rule 3(d), 28 U.S.C. *foll.* § 2254).

The Second Circuit has not interpreted this aspect of Habeas Rule 3(d) and there are no cases within the Circuit that are on point. The only decision cited by Respondent is an unpublished district court decision, *Brown v. Smithem*, No. 15-CV-1458 (BKS/CFH), 2017 WL 1155825, at *4 (N.D.N.Y. Feb. 28, 2017), *report and recommendation adopted*, No. 915CV01458BKSCFH, 2017 WL 1155827 (N.D.N.Y. Mar. 27, 2017), which did not involve a § 2254 petition; did not mention or interpret Habeas Rule 3(d); and is, in any event, factually distinguishable from Blocker's case.

Moreover, Respondent's interpretation of Habeas Rule 3(d) has not been favored by the circuit courts of appeal that have considered the issue. *See*, *e.g.*, *Houser v. United States*, 808 F. App'x 969, 971 (11th Cir. 2020) (unpublished op.) ("[W]e have never held that in order to be timely filed, a § 2255 motion must contain a declaration in compliance

with § 1746. Indeed, the plain language of Rule 3(d), which provides that '[t]imely filing *may be shown* by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement,' undermines such a contention. *See* Rule 3(d), Rules Governing Section 2255 Proceedings (emphasis added). The plain language of the rule indicates that there are multiple ways in which a prisoner can demonstrate the timeliness of a filing, including, but not limited to, filing a declaration in compliance with § 1746.").

When faced with "an enigmatic threshold issue," the Court "occasionally may avoid addressing [it] by cutting directly to the merits." *Ramos-Martinez v. United States*, 638 F.3d 315, 324 (1st Cir. 2011) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (disclaiming any intention "to suggest that the procedural-bar issue must invariably be resolved first" in a habeas case, and explaining that "[j]udicial economy might counsel" going directly to the merits if the merits were easily resolvable against the petitioner)). In general, this approach "requires . . . that the outcome on the merits is both clear and favorable to the party advocating the threshold issue." *Id.* at 324–25 (citing *Lambrix*, 520 U.S. at 525).

Here, the timeliness issue involves a novel and rather complicated issue of law which is entirely unsettled within this Circuit. Even if the Court were to find the Petition untimely, it still would have to analyze whether Blocker has a viable actual innocence claim to allow him to avoid the statute of limitations, which it must do in any event since Blocker has argued he is actually innocent in response to Respondent's assertion of the affirmative defense of procedural default. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (holding that "actual innocence, if proved, serves as a gateway through which a

petitioner may pass whether the impediment is a procedural bar, . . . or . . . expiration of the statute of limitations").

In addition, as part of the timeliness analysis, the Court would have to assess whether Blocker is entitled to equitable tolling of the limitations period. On the record as it stands, the Court might be inclined to find equitable tolling since, based on the letters attached to the Petition, the delay in processing the Petition for mailing appears to be attributable to prison officials. Indeed, Blocker might be entitled to the later start date of the statute of limitations afforded by 28 U.S.C. § 2244(d)(1)(B), which applies when a state-created impediment prevents timely filing.

In contrast, the "outcome on the [Petition] is both clear and favorable," *Ramos-Martinez*, 638 F.3d at 324–25, to Respondent. In addition, Respondent's timeliness argument does not implicate the Court's subject matter jurisdiction. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.) (joining sister circuits and holding that the statute of limitations in AEDPA is not jurisdictional), *cert. denied*, 531 U.S. 840 (2000). Accordingly, in the interests of judicial economy and fairness, the Court finds it appropriate to bypass the timeliness issue and proceed directly to the Petition's merits.

## II.    The Petition Is a Mixed Petition but May Be Denied Under the Authority of 28 U.S.C. § 2254(b)(2)

Under 28 U.S.C. § 2254(b)(1), a prisoner in state custody must exhaust his or her state court remedies by "fairly present[ing]" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). The exhaustion requirement is not satisfied when the petitioner has "employed the wrong procedural vehicle in raising his claim and

presented it to the wrong state court." *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985) (citing *Ex parte Hawk*, 321 U.S. 114 (1944) (*per curiam*); other citations omitted). In addition, the Second Circuit generally has required habeas petitioners to present all factual allegations supporting ineffective assistance claims to the state courts before filing in federal court. *See Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991) ("Since Rodriguez's claim of ineffective assistance of counsel can turn on the cumulative effect of all of counsel's actions, all his allegations of ineffective assistance should be reviewed together [by the state courts in the first instance].") (citation omitted).

Respondent asserts that some of Blocker's allegations of ineffective assistance of trial counsel are unexhausted because he incorrectly raised them on direct appeal rather than in a collateral motion to vacate the judgment pursuant to C.P.L. § 440.10. As Respondent points out, the Appellate Division considered the merits of the record-based ineffectiveness claims, *see Blocker*, 132 A.D.3d at 1287-88 (finding that trial counsel provided meaningful representation), but held that the claims asserting ineffective assistance of trial counsel based on the failure to move for severance and failure to conduct an adequate investigation were "based on matters outside the record and therefore must be raised in a motion pursuant to C.P.L. [§] 440.10." *Id.* (citation omitted). There is no record of Blocker ever filing a C.P.L. § 440.10 motion.

In his Reply, Blocker does not address Respondent's exhaustion argument apart from insisting, without explanation, that his ineffectiveness claims are fully exhausted. They are not. "Courts in the Second Circuit have held that when[, as here,] the Appellate Division indicates that a claim for ineffective assistance of counsel is unreviewable on direct appeal because it is based upon matters "*dehors* the record" and the petitioner fails

to subsequently file a CPL § 440.10 motion, the claim for ineffective assistance of counsel is unexhausted." *Smalls v. Lee*, No. 12CV2083KMKLMS, 2016 WL 5334986, at *11 (S.D.N.Y. Sept. 22, 2016) (collecting cases). Because there is no time-limit on filing a C.P.L. § 440.10 motion, and because a C.P.L. § 440.10 motion based on off-the-record ineffectiveness claims would not be barred by any procedural rule, Blocker still has remedies available in the state. Therefore, he has not fulfilled the exhaustion requirement. *See*, *e.g.*, *Acosta v. Couture*, No. 99 CIV 9727 (LMM), 2003 WL 272052, at *6 (S.D.N.Y. Jan. 23, 2003) (ineffective assistance of trial counsel claim was unexhausted because it "was not properly raised in the state court and [petitioner] may still file a CPL § 440.10 motion").

Because Ground One is unexhausted, and the remaining claims in the Petition are exhausted, the Petition is a so-called "mixed petition." *See Zarvela v. Artuz*, 254 F.3d 374, 378 (2d Cir. 2001). Courts in this Circuit have identified four procedural options available when confronted with a mixed petition: "(1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits [pursuant to 28 U.S.C. § 2254(b)(2)]; (3) allow the petitioner to delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims." *Wesley-Rosa v. Kaplan*, 274 F. Supp. 3d 126, 128 (E.D.N.Y. 2017) (quotation omitted).

Dismissal of the Petition without prejudice with leave to refile would jeopardize Blocker's ability to obtain habeas review because the statute of limitations has long since expired. The first option therefore is inappropriate. *See Zarvela*, 254 F.3d at 382 (finding that outright dismissal was not appropriate because, "with so little time remaining on his

statutory one-year limitations period, a complete dismissal "'jeopardize[d] the timeliness of a collateral attack'") (quotation omitted; alteration in original).

Blocker has not requested that the Petition be stayed and held in abeyance so that he may return to state court and file a C.P.L. § 440.10 motion. In any event, the Court finds that granting stay would be an abuse of discretion because Blocker does not have "good cause" for failing to complete exhaustion before filing in federal court. Indeed, Blocker has been on notice since his direct appeal that some of his claims were not properly before the Appellate Division and instead should be raised in a C.P.L. § 440.10 motion. "The absence of 'good cause' for the failure to exhaust is fatal to Petitioner's ability to fulfill the *Rhines* standard." *Carr v. Graham,* 27 F. Supp.3d 363, 365 (W.D.N.Y. 2014) (citing *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005) ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.")). Therefore, the fourth option is inappropriate.

It is unnecessary to determine whether Blocker wishes to delete his unexhausted claim because, under either the second or third options, the outcome is same—the Petition must be dismissed. As discussed further below, Grounds Two and Four are not cognizable, and Ground Three is subject to an unexcused procedural default. All the claims of ineffective assistance in Ground One—both unexhausted and exhausted—"are unquestionably meritless, and their lack of merit is not subject to debate by reasonable jurists." *Mills v. Lempke*, No. 11-CV-0440 MAT, 2013 WL 435477, at *5 (W.D.N.Y. Feb. 4,

2013) (citations omitted). Accordingly, reliance on 28 U.S.C. § 2254(b)(2) to deny this mixed petition is appropriate. *Id.*

### III. Petitioner Was Not Denied the Effective Assistance of Trial Counsel (Ground One)

#### A. Legal Standard

To succeed on a claim of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), the petitioner must establish that counsel's performance "fell below an objective standard of reasonableness[,]" *id.* at 688, and that the petitioner suffered prejudice as a result, *see id.* at 694. Prejudice, for *Strickland* purposes, is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The habeas petitioner bears the burden of establishing both deficient performance and prejudice." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (citation omitted).

#### B. Trial Counsel's Alleged Errors

##### 1. Failure to Seek Suppression of the Handgun and Shotgun

Blocker asserts that although trial counsel's omnibus motion challenged the traffic stop under the Fourth Amendment rights, he unreasonably "did not move to suppress the guns seized by the police after [the] stop." SR. 093–095; ECF No. 1, Ground One (incorporating direct appeal arguments). Blocker continues, "[t]he papers were so badly drafted that they did not indicate what the result of any unlawful arrest would be." SR. 094. The Appellate Division denied this aspect of Blocker's ineffectiveness claim, finding that he had "failed to demonstrate that the alleged deficiencies in the pretrial suppression motion compromised his defense or his right to a fair trial, inasmuch as County Court

addressed his challenge to the legality of the search of his vehicle." *Blocker*, 132 A.D.3d at 1287.

Respondent argues that trial counsel's omnibus motion was not deficient because it effectively sought suppression of the weapons. Respondent notes that trial counsel asserted that "the arrest of the defendant was not founded on reasonable suspicion to believe that criminal acts had been committed and hence such arrest was in violation of the defendant's Fourth Amendment Rights[,]" SR.032, and cited *Mapp v. Ohio*, 367 U.S. 643 (1961). *See* SR. 025–026, 032. "A *Mapp* hearing is called for when the defendant alleges *that physical evidence* sought to be used against him or her was obtained illegally by law enforcement officers and is inadmissible at trial." *Montgomery v. Wood*, 727 F. Supp. 2d 171, 186 (W.D.N.Y. 2010) (citations omitted). Moreover, the People's response described Blocker's omnibus motion as seeking "to *suppress any evidence* obtained in connection with the arrest of the defendant." SR. 042 (emphasis supplied).

Then, at the suppression hearing, trial counsel argued that because the police had no basis to arrest petitioner, they also had no basis to take possession of, or search, the Ford Taurus station wagon. Therefore, trial counsel contended, the handgun and the shotgun should be suppressed. H2. 50–51. Trial counsel effectively made a "fruit of the poisonous tree" argument[4] which, if successful, would have resulted in suppression of the weapons.

---

[4]  Under the fruit of the poisonous tree doctrine, "evidence obtained following an illegal seizure generally must be excluded unless the government shows[, by a preponderance of the evidence,] (1) that the evidence would have been discovered inevitably, (2) that the evidence was discovered from a separate, independent source, or (3) that the discovery of the evidence was so attenuated from the illegal seizure that the taint of the unlawful police conduct was dissipated." *United States v. Johnson*, 365 F. Supp. 3d 89, 99 (D.D.C. 2019) (citing *Utah v. Strieff*, 579 U.S. 232, 237 (2016); *United States v. Holmes*, 505 F.3d 1288, 1293 (D.C. Cir. 2007)).

In its findings of fact and conclusions of law, the trial court determined that the traffic stop, the arrest, and the search of Blocker's car all were "proper" and, accordingly, the trial court denied "the motion to suppress the sawed-off shotgun, [and] any other property seized from the vehicle, including the revolver. . . ." H2. 71–72. As Respondent argues, since the trial court considered and decided the suppression arguments that Blocker complains trial counsel failed to raise, he cannot demonstrate that he was prejudiced by the alleged omission. *See*, *e.g.*, *Curzi v. United States*, 773 F. Supp. 535, 545 (E.D.N.Y. 1991) (finding no prejudice where co-defendants' counsel made the suppression motion that petitioner faulted his counsel for not making), *aff'd sub nom. Laaman v. United States*, 973 F.2d 107, 113 (2d Cir. 1992).

### 2.   Failure to Challenge the Legality of the Inventory Search

On direct appeal, Blocker faulted trial counsel for failing to argue the People did not establish that the search of the car, including the glove box, constituted a valid "inventory search" under New York law. *See* SR. 094–095; ECF No. 1, Ground One (incorporating direct appeal arguments). Although the Appellate Division did not expressly discuss the inventory-search issue, it "reject[ed] defendant's contention that he was denied effective assistance of counsel[.]" *Blocker*, 132 A.D.3d at 1287.

At the outset, Respondent concedes that the search of Blocker's car did not constitute a valid "inventory search" under New York law because, as appellate counsel pointed out on appeal, the prosecution did not present evidence of any police policy regarding inventory searches, and the officer who conducted the search did not make a meaningful inventory list. *See* ECF No. 20 at 52 n.11 (citing *People v. Gomez*, 13 N.Y.3d

6, 11 (2009); other citation omitted).[5] Nevertheless, Blocker has not shown that there is a reasonable probability that the outcome of the suppression hearing would have been different had trial counsel explicitly argued that the People failed to establish compliance with the rules regarding inventory searches.

In fact, Collins' attorney made the argument that Blocker faults trial counsel for not making—that "there was no inventory search," but rather the police officers conducted "a search for evidence." H2. 57–58. The trial court rejected this proposition, finding that Blocker's car "was ultimately searched prior to being towed pursuant to a general order of the Rochester Police Department [that] required that the vehicle be searched." H2. 68; *see also* H2. 71. Thus, Blocker cannot establish that the outcome of the suppression hearing would have been different had his attorney raised this argument. Blocker's failure to demonstrate prejudice obviates the need to consider whether trial counsel's performance was deficient. *See Strickland*, 466 U.S. at 697 (stating that where the court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," it need not address the performance prong).

### 3.  Failure to Object to Prosecutorial Misconduct

Blocker reasserts his claim, raised on direct appeal, that trial counsel erred by failing to object when the prosecutor "used every opportunity to tell jurors that the neighborhood in which this car was stopped was a high-crime one with a lot of violence." SR.102-05; *see* ECF No. 1, Ground One (incorporating direct appeal arguments).

---

[5] Generally, the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976), precludes habeas review of Fourth Amendment claims so long as the petitioner had a full and fair opportunity to litigate them in state court. In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), "the Supreme Court rejected arguments that *Stone v. Powell* bars Sixth Amendment ineffective assistance of counsel claims premised on counsel's failure to raise Fourth Amendment objections." *Shaw v. Scully*, 654 F. Supp. 859, 865 (S.D.N.Y. 1987) (noting that "[w]hile the Court may not sidestep *Stone v. Powell* by equating ineffective assistance of counsel with unconscionable breakdown, it may . . . consider the ineffective assistance claim independently").

According to Blocker, the prosecutor made a "safe-streets" appeal "in an implicit manner" during his opening and statements and during his direct examination of officers Pike, Luciano, and Wilcox. He complains that during opening statements, the prosecutor told the jurors they were "going to hear this is a rough neighborhood." Tr. 210; that when Pike saw Madison "lean forward and reach down with both arms," he knew from "his training . . . that's life threatening" so Pike yelled, "'he's reaching,'" Tr. 211; that during a "routine traffic stop," "officers' lives are now in jeopardy or possibly in jeopardy," Tr. 209 "[a]nd that's what happened in this case." Tr. 209.

Blocker further contends that when questioning Pike, Luciano, and Wilcox, the prosecutor improperly elicited testimony that the RPD Tactical Unit is "a violence suppression unit out looking for guns and drugs," Tr. 250; the area of the traffic stop was a high-crime neighborhood, Tr. 250–51; "[t]here had been a spike in violence" in the area which the Tactical Unit was "assigned to address," Tr. 219–20; per RPD policy, backup units are called even for routine traffic stops because they are dangerous, especially in the neighborhood at issue, Tr. 223, 225–51, 302; Pike covered the passenger side of the car during the traffic stop "[f]or officer safety" because they were in a "very high-risk neighborhood," Tr. 250–51; Pike concluded that Madison's action of leaning forward and reaching down in the car was life threatening, based on his training, experience, and the dangerousness of the neighborhood, Tr. 251–52; and the three police officers testified they did not wear a bulletproof vest at home and that every time they were wearing the vests they were also carrying guns. Tr. 231, 259–60, 292–92.

Finally, Blocker takes issue with the prosecutor's comments, at the very end of his summation, that Collins was wearing a bullet proof vest and was "ready for combat," Tr.

435; that Blocker, Collins, and Madison were driving around "looking for trouble"; and that "the police, thankfully, stumbled upon them before they did what they were going to do." Tr. 436–37.

In his appellate brief, Blocker argued that this line of argument and testimony implied "that a guilty verdict is necessary to help prevent the spike in violent crime in the neighborhood," and therefore amounted to an improper "safe streets" argument. SR. 102–03. The People's opposition brief responded that "[w]hile testimony and argument concerning the level of violence on the streets in the City of Rochester were arguably improper, the conduct was not repeated or inflammatory." SR. 128. The Appellate Division denied the claim, finding that "although counsel failed to object to comments by the prosecutor that the People concede supported an improper 'safe streets' argument, it cannot be said that, viewing counsel's representation in totality, such error deprived defendant of meaningful representation." *Blocker*, 132 A.D.3d at 1288 (citations and internal quotation marks omitted).

Respondent agrees that New York courts have criticized prosecutors for making "improper 'safe streets' appeal[s]" "by suggesting to the jury that the community must be protected from the defendant." *People v. Brown*, 17 N.Y.3d 742, 743 (2011); *accord*, *e.g.*, *People v. Tolliver*, 267 A.D.2d 1007, 1007 (4th Dep't 1999) (stating that the "prosecutor improperly made a 'safe streets' comment by urging the jury to do justice for the safety of the neighborhood where the crime was committed"). Respondent contests the Appellate Division's statement that the People conceded an improper safe streets argument by the prosecutor, asserting that the People's appellate brief merely granted the point for the sake of argument. Respondent further argues that because the prosecutor did not

expressly ask the jury to convict Blocker to protect the community, he did not make a "safe streets" argument. For purposes of disposing of this claim, the Court will assume that the prosecutor made an implicit "safe streets" appeal through his argument and questioning. Nonetheless, Blocker has not demonstrated that trial counsel's failure to object was professionally unreasonable or resulted in prejudice to the defense.

"As with trial decisions to offer or stipulate to certain evidence, decisions such as when to object and on what grounds are primarily matters of 'trial strategy and tactics[.]'" *United States v. Cohen*, 427 F.3d 164, 170–71 (2d Cir. 2005) (quoting *Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir.1997) (internal quotation marks omitted in original)). Thus, they "are 'virtually unchallengeable' absent exceptional grounds for doing so." *Id.* (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004); internal quotation marks omitted in original; further citations omitted).

It is telling that, out of all the allegedly improper prosecutorial comments and questions identified by Blocker's appellate counsel and discussed above, co-defendant Collins' attorney only objected on three occasions. *See* Tr. 302 (objecting to Wilcox's testimony that the area of the traffic was a very violent one on the basis it was cumulative and bolstering of the other officers' testimony); Tr. 292 (objecting when the third officer was asked whether he wore a bullet-proof vest at home on the basis it was not relevant); Tr. 435–46 (objecting, on the basis of "[b]urden shifting," to summation comment that there was "no explanation" for Collins wearing a bullet-proof vest). These objections were overruled.

Notably, on Collins' direct appeal, he did not raise a claim of ineffective assistance of counsel based on his attorney's failure to register more objections to the prosecutor's

questions and commentary or a stand-alone claim of prosecutorial misconduct. *See Collins*, 105 A.D.3d at 1378.  Blocker thus has not overcome the "strong presumption" that trial counsel's decision not to object fell "within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.

Furthermore, Blocker is unable to establish prejudice. His only argument on direct appeal as to the effect of the prosecutor's commentary and questioning was that "[t]he jury heard all of it as if it should be something considered by them in arriving at a verdict." SR. 104–05. However, that statement ignores the only issue that matters for purposes of showing prejudice—the effect on the verdict of what the jury heard. It also does not accurately reflect the record. The trial court instructed the jury during its opening remarks, just prior to summations, and in its final charge that the attorney's opening and closing statements were not evidence. Tr. 202, 408, 444. The jury is presumed to have followed the court's instructions, and Blocker has offered no reason why the presumption should not apply here. *See*, *e.g.*, *Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

### 4.   Failure to Introduce Madison's Pre-Trial Statement

Blocker reasserts his appellate argument that trial counsel erred in not seeking to introduce an alleged statement by Madison to the police in which he admitted that both the shotgun and the handgun were his alone. SR. 97–98 (citing S. 19–20). According to Blocker, trial counsel erroneously concluded that Madison's statement was not admissible as a statement against penal interest. *Id.*  Respondent argues that appellate counsel's argument is based on an earlier misconstruction of the relevant facts by Blocker and trial counsel. The Court agrees.

At sentencing, in connection with the C.P.L. § 330.30 motion, trial counsel asserted that Madison had signed a statement in which he admitted possessing both weapons in the car, and further stated that Blocker "had no involvement." S. 19–20. However, a colloquy that took place out of the presence of the jury indicates that trial counsel's characterization of Madison's statement was incorrect. *See* Tr. 389–90. Madison's only police statement, dated January 2, 2009, asserted, "'[t]he shotgun is mine, I don't know anything about that handgun[,]'" Tr.390, but it did *not* claim that Blocker "had no involvement." *See id.*

In any event, Madison's actual statement to the police was not helpful to the defense, as evidenced by the fact that the prosecutor sought to introduce it. Tr. 389–90. However, the trial court correctly ruled that Madison' statement to the police, unlike his plea colloquy, was not a declaration against penal interest and accordingly was inadmissible. Tr. 391–92.

Thus, while trial counsel made a mistake as to the contents of Madison's statement to the police, he was correct on the legal issue—the statement was inadmissible. Blocker has not shown that trial counsel erred in a manner that was professionally unreasonable or resulted in prejudice to the defense.

### 5. Failure to Conduct an Inadequate Investigation

#### a. Failure to Discover Witness Prior to Suppression Hearing

Blocker contends, as he did on direct appeal, that trial counsel was ineffective because he did not discover Rosario, who ultimately signed an affidavit submitted as part of the C.P.L. § 330.30 motion, in time to testify at the suppression hearing and at trial. SR. 096–097. According to Blocker, Rosario "would have contradicted police testimony

at the suppression hearing and at trial," because, as noted above, Rosario stated in his affidavit that he saw the police approach Blocker's car "with guns drawn from the beginning." SR. 096.

The decision "whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987), *cert. denied*, 484 U.S. 958 (1987). Such decisions, "if reasonably made, will not constitute a basis for an ineffective assistance claim." *Id*.

"Moreover, a petitioner does not show that he was prejudiced by trial counsel's alleged deficient performance merely by asserting that certain witnesses might have supplied relevant testimony; rather, he must state exactly what testimony they would have supplied and how such testimony would have changed the result." *Carr v. Senkowski*, No. 01-CV-689, 2007 WL 3124624, at *20 (W.D.N.Y. Oct. 23, 2007) (citing, *inter alia*, *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). "[I]n order for the [petitioner] to demonstrate the requisite *Strickland* prejudice, the [petitioner] must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *Id.* at *22 (citing *Alexander*, 775 F.2d at 602).

This claim is defective for several reasons. First, Blocker has not demonstrated what trial counsel did and did not do as far as his investigation into Blocker's case. As the Supreme Court has held, "the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. 12, 23 (2013).

Second, even assuming that trial counsel should have discovered Rosario earlier, Blocker has not established that Rosario would have testified at the suppression hearing or at trial.

Third, even if Rosario would have been willing to testify, Blocker has not established a reasonable probability that Rosario's observations about the police officers approaching Blocker's vehicle with guns drawn would have changed the outcome of the suppression hearing. According to appellate counsel, Rosario's testimony was "critical" because there was "no other challenge to [the police witnesses'] credibility so testimony from [Rosario] could have led either County Court or jurors to question the truthfulness of Officer Pike's testimony about Mr. Madison leaning forward and reaching, if nothing else." SR. 096.

Significantly, however, Rosario did not state that he could see inside Blocker's car; his affidavit contains no information that would have substantively contradicted Pike's observations of Madison's movements inside the vehicle. Rather, appellate counsel appears to be arguing that if the factfinder accepted Rosario's testimony that the police approached the car with guns drawn, it "could have" caused the factfinder to reject, as a fabrication, Pike's testimony about what he observed Madison doing in the front seat. This is pure conjecture and surmise, which does not suffice to show a reasonable probability that the factfinder would have made that inferential leap. *See*, *e.g.*, *Scott v. Racette*, No. 1:15-CV-00043-MAT, 2018 WL 451825, at *9 (W.D.N.Y. Jan. 17, 2018) ("Petitioner offers nothing but speculation as to how their testimony would have helped the defense, which is insufficient to show that counsel was ineffective.") (citing *Eisemann v. Herbert*, 401 F.3d 102, 108 (2d Cir. 2005) (ineffective assistance claim based on failure to call a witness

lacked merit where "there is nothing in the record that provides the slightest indication as to what [the witness] would have said if called or even that he would have said anything at all" and it was "speculation to suggest that his testimony would have been exculpatory") (citation omitted)); *Mills v. Lempke*, No. 11-CV-0440 MAT, 2013 WL 435477, at *19 (W.D.N.Y. Feb. 4, 2013) ("Mills' assertions of prejudice [from trial counsel's failure to call a witness] are based purely upon his own self-serving speculation.").

Even if the factfinder drew the desired inference from Rosario's proposed testimony, there is no reasonable probability that the outcome of the hearing would have been different. As appellate counsel conceded, Rosario's "testimony might not have effected [sic] the legality of the approach for the traffic infraction[,]" SR.096 (citing *People v. Clark*, 172 A.D.2d 679, 680 (2d Dep't 1991) ("The fact that the officers had their weapons drawn did not transform the lawful detentive stop into an arrest since the reasonableness of the officers' conduct must be viewed against the realities of the dangers posed to officers in nighttime street encounters with suspected criminals[.]")). This concession by appellate counsel undermines any argument that the absence of Rosario's testimony had more than a conceivable effect on the trial. *See Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("[Prejudice] requires a 'substantial,' not just 'conceivable,' likelihood of a different result.") (quotation omitted).

### b. Failure to Obtain 911 Call Recordings

Petitioner reasserts his appellate argument that trial counsel erroneously waited until sentencing to subpoena the recordings of certain 911 calls. SR. 097. At the sentencing hearing, in connection with his contention that the traffic stop was "suspect" and warranted setting aside the verdict, trial counsel stated that he "had subpoenaed the

nineone-one records for some correlation of all those calls" but he had not yet received the records. S.8. Petitioner stated on direct appeal that it was unclear why trial counsel had requested the 911 recordings, but "[r]egardless, there is no reason to have such recordings before sentencing but not to have them prior to trial." SR. 097.  Petitioner's failure to articulate *how* the 911 recordings would have helped the defense amounts to an admission that he cannot prove prejudice.

Construing Blocker's *pro se* Petition to raise the strongest arguments it suggests, the Court finds that trial counsel may have been referring to the police officers' testimony that, prior to the traffic stop, they had been returning from clearing an unrelated report of shots fired. Trial counsel may have wanted to review the contemporaneous 911 call records to see if there had been a "shots fired" report as the officers claimed. However, since Blocker has never obtained the 911 call records, it is pure speculation that trial counsel's failure to obtain them prejudiced his defense either at the suppression hearing or at trial. *See*, *e.g.*,  *Maddox v. Lord*, 818 F.2d 1058, 1062 (2d Cir. 1987) ("[P]etitioner contends that her trial counsel unreasonably failed to investigate the prosecution's forensic evidence. Even assuming the failure to be unreasonable, petitioner has not met the second prong of the *Strickland* test because she has not shown that such alleged failure prejudiced her defense. Although she offers an affidavit from an expert who will testify as to the path and trajectory of the bullets fired from the rifle, there is no indication that this evidence would be in any way exculpatory.").

### 6.  Failure to Move to Sever Petitioner's Trial

Blocker repeats the claim asserted on direct appeal that trial counsel erred by not moving for a separate trial from Collins. ECF No. 1, Ground One; SR. 093, SR. 098–101. Blocker contends that a severance motion would have succeeded because his and Collins' defenses were incompatible. Moreover, he asserts, trial counsel's failure to obtain a severance prevented him from exercising his right to testify because he was afraid that Collins' attorney would have cross-examined him regarding his prior convictions.

Under New York law, "severance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt." *People v. Mahboubian*, 74 N.Y.2d 174, 184 (1989). Otherwise, an application for severance is left to the discretion of the trial judge, whose ruling will ordinarily not be disturbed. *People v. Cardwell*, 78 N.Y.2d 996, 997 (1991) (citation omitted). Where, as here, "against the defendants is supplied by the same evidence, only the most cogent reasons warrant a severance[.]" *Mahboubian*, 74 N.Y.2d at 183.

According to Blocker, his and Collins' positions were so "completely inconsistent" that Collins' "attorney would have been obliged to impeach" Blocker as to his prior convictions. SR. 099. Since Collins' attorney would not have been subject to the court's *Sandoval* ruling limiting cross-examination by the prosecutor, *see People v. McGee*, 68 N.Y.2d 328, 333 (1986), Blocker reasons that severance was necessary to avoid prejudicing his defense. Courts in New York have routinely rejected such an argument. *See People v. Murray*, 155 A.D.3d 1106, 1109 (3d Dep't 2017) ("Although defendant correctly notes that the codefendant would not be bound by County Court's *Sandoval*

29

ruling . . . , given that defendant and the codefendant were charged with similar crimes and the People used the same evidence against them, such fact does not compel separate trials.); *People v. Hernandez*, 260 A.D.2d 399, 400 (2d Dep't 1999) (similar).

Blocker has alleged only one "inconsistency" between his and Collins' respective versions of events—Blocker claimed that he picked up Collins and Madison at the same time, while Collins testified before the grand jury that Madison was already in the car when Blocker picked up Collins. SR.099. This alleged inconsistency, which is not an inconsistency between their actual defenses, would not have supported a motion to sever. *See Mahoubian*, 74 N.Y.2d at 184 ("[S]everance is not required solely because of hostility between the parties, differences in their trial strategies or inconsistencies in their defenses.") (citation and internal quotation mark omitted).

Since Blocker and Collins both blamed Madison alone for possessing both guns, *see* Tr. 215–18, 381, 405–07, their defenses were not in irreconcilable conflict. "A severance was therefore unwarranted, and any such motion is likely to have failed. Because a motion to sever would have had little chance of success, trial counsel cannot have provided ineffective assistance for failing to make such a motion." *Santana v. Capra,* 284 F. Supp. 3d 525, 543 (S.D.N.Y. 2018) (severance would have been denied where co-defendants' defenses were substantially the same and they were charged with acting in concert, such that the evidence against them was the same) (citing *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (holding that counsel's "failure to make a meritless argument does not rise to the level of ineffective assistance")).

## IV.    The Fourth Amendment Claim Is Barred (Ground Two)

Blocker asserts, as he did on direct appeal, that the trial court violated his Fourth Amendment rights by finding that the search of the glove box was part of a valid inventory search despite the People's failure to meet their initial burden at the suppression hearing. *See* SR. 107–112; ECF No. 1, Ground Two (incorporating direct appeal arguments). Respondent argues that the Court should dismiss the claim as non-cognizable on federal habeas review under the doctrine of *Stone v. Powell*, *supra*. *See* ECF No. 20 at 41.

The Supreme Court held in *Stone* that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481–82 (emphasis supplied).  Significantly, "all that must be shown is that the State has provided an opportunity to litigate the habeas petitioner's Fourth Amendment claim; it matters not whether the petitioner actually 'took advantage of the State's procedure.'" *McClelland v. Kirkpatrick*, 778 F. Supp. 2d 316, 330–31 (W.D.N.Y. 2011) (quoting *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002)).

The Second Circuit subsequently discerned two exceptions to *Stone v. Powell*'s bar against reviewing Fourth Amendment claims. *See Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir.1977) (*en banc*), *cert. denied*, 434 U.S. 1038 (1978).  First, "federal habeas corpus remains available," *Gates* explained, "[i]f the state provides no corrective procedures at all to redress Fourth Amendment violations." *Id.* Second, habeas review "may still be warranted" "even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that

process[.]" *Id.* (citing *Frank v. Mangum*, 237 U.S. 309 (1915); other citation omitted). Some sort of "egregious" "disruption or obstruction of a state proceeding," such as the bribing of a trial judge, typifies an "unconscionable breakdown." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

Federal courts have approved N.Y. Crim. Proc. Law § 710.10 *et seq*. as being "facially adequate" for litigating Fourth Amendment claims. *Capellan*, 975 F.2d at 70 n.1 (collecting cases). However, Blocker suggests that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts because trial counsel was ineffective for failing to raise it at the suppression hearing, which resulted in the Appellate Division dismissing it as unpreserved for review.

A "petitioner is not denied an opportunity for full and fair litigation of his claim if[, as here,] he fails to raise and to preserve the claim in state court." *United States ex rel. Bostick v. Peters*, 3 F.3d 1023, 1027 (7th Cir. 1993) (citations omitted); *see also Collins v. Scully*, 878 F. Supp. 452, 458 (E.D.N.Y. 1995) ("[P]etitioner had a full and fair opportunity to raise a Fourth Amendment claim during two separate pre-trial suppression hearings. In each instance, defense counsel did not specifically raise such a claim. Accordingly, petitioner's Fourth Amendment claim is not reviewable by this Court.") (footnotes omitted).

Further, trial counsel's alleged ineffectiveness is not the type of "unconscionable breakdown" in the state-afforded procedure for litigating Fourth Amendment issues contemplated by the Second Circuit in *Gates*. *See Crenshaw v. Sup't Five Points Corr. Fac.*, 372 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (stating that petitioner's "assertions that the state courts were incorrect and defense counsel incompetent do not constitute the

sort of 'breakdown' referred to in *Gates*"); *Shaw v. Scully*, 654 F. Supp. 859, 865 (S.D.N.Y. 1987) ("Where petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or deliberately bypassed the procedure . . . courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown."); further citations omitted); *Parker v. Ercole*, 582 F. Supp. 2d 273, 288 (N.D.N.Y. 2008) (trial counsel's failure to call petitioner and an FBI agent to testify at the suppression hearing was "is insufficient to establish the sort of unconscionable breakdown necessary for the Court address petitioner's Fourth Amendment claims"). Because Blocker had a full and fair opportunity to litigate his Fourth Amendment claim, it must be dismissed as barred under the *Stone v. Powell* doctrine.

### V.   The Jury Instruction Claim Must Be Deemed Exhausted and Procedurally Defaulted (Ground Three)

Blocker reprises his argument, raised on direct appeal, that "[t]he trial court should not have instructed the jury about accessorial liability when there was no proof to support such charge." SR. 113–16; ECF No. 1, Ground Three (incorporating direct appeal arguments). Respondent argues that Ground Three is unexhausted because it was not fairly presented in federal constitutional terms to the state courts, and that it must be deemed exhausted and procedurally defaulted because Petitioner no longer has state remedies available to exhaust it. *See* ECF No. 20 at 34–36. Alternatively, Respondent contends that the claim is meritless. *See id.* at 36-40. The Court agrees that the claim must be deemed exhausted and procedurally defaulted, and that Blocker has not overcome the procedural default.

"Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies." *Galdamez v. Keane*, 394 F.3d 68,

72 (2d Cir. 2005) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. §

2254(b)(3), (c)). In general, the exhaustion requirement is satisfied "when a petitioner has:

(i) presented the federal constitutional claim asserted in the petition to the highest state

court (after preserving it as required by state law in lower courts) and (ii) informed that

court (and lower courts) about both the factual and legal bases for the federal claim."

*Ramirez v. Att'y Gen. of State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) (citing *Picard v.

Connor*, 404 U.S. 270, 276–77 (1971); other citation omitted).

    The Supreme Court has explained that "[i]f state courts are to be given the

opportunity to correct alleged violations of prisoners' federal rights, they must . . . be

alerted to the fact that the prisoners are asserting claims under the United States

Constitution." *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). A habeas petitioner need

not cite "book and verse" of the Constitution, however. *Picard*, 404 U.S. at 278. According

to the Second Circuit, "adequate notice to the state courts that they are to decide federal

constitutional claims at least includes: '(a) reliance on pertinent federal cases employing

constitutional analysis, (b) reliance on state cases employing constitutional analysis in

like fact situations, (c) assertion of the claim in terms so particular as to call to mind a

specific right protected by the Constitution, and (d) allegation of a pattern of facts that is

well within the mainstream of constitutional litigation.'" *Petrucelli v. Coombe*, 735 F.2d

684, 687–88 (2d Cir. 1984) (quoting *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186,

194 (2d Cir.1982) (*en banc*)).

    Here, appellate counsel relied primarily on P.L. § 20.00, the provision on

accomplice liability, arguing that "no actual proof [was] offered at trial sufficient to present

that theory to the jury." SR.113. Appellate counsel did not cite any federal cases

employing constitutional analysis. The sole decision cited was a state case, *People v. Crimmins*, 36 N.Y.2d 230 (1975), which sets forth the standard for determining harmlessness of *non*-constitutional errors in New York and, moreover, is "not the same as the Federal rule" for assessing non-constitutional errors. *Id.* at 241.

Furthermore, "the assertion of this claim did not 'call to mind a specific right protected by the Constitution[.]'" *Knoesel v. Duncan*, No. 03-CV-2792(SLT), 2006 WL 2524198, at *16 (E.D.N.Y. Aug. 30, 2006) (quoting *Daye*, 696 F.2d at 194), because "[e]rrors in jury instructions involve issues of state law and thus, rarely provide a sufficient basis for federal habeas review," *McGhee v. Fischer*, No. CV-05-3842 (DGT), 2006 WL 1788185, at *5 (E.D.N.Y. June 26, 2006).

Finally, a claim based on an erroneous jury instruction is not "well within the mainstream of constitutional litigation[,]" *Daye*, 696 F.2d at 194. In *Anderson v. Harless*, 459 U.S. 4 (1982), the Supreme Court "held that a habeas petitioner had not fairly presented a federal due process claim in state court when he argued that the trial court's jury instruction was 'erroneous,' and cited only a state law case" for support. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Anderson*, 459 U.S. at 7). As the Supreme Court explained, "[i]t is not enough that all the facts necessary to support [a] federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson*, 459 U.S. at 6 (internal citations omitted).

Ground Three therefore was not fairly presented in federal constitutional terms to the state courts, and it is unexhausted. When a petitioner has no available means of exhausting a claim in state court, it will be "deemed exhausted." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (citing, *inter alia*, *Castille v. Peoples*, 489 U.S. 346, 351 (1989)

(finding that "[t]he requisite exhaustion may nonetheless exist, of course, if it is clear that respondent's claims [that were not fairly presented] are now procedurally barred under [the state's] law")).

Here, New York's procedural rules prevent Blocker from attempting to raise Ground Three for a second time before the New York Court of Appeals since he already has used the one direct appeal to which he is entitled. *Zacher v. Graham*, No. 6:14-CV-06027(MAT), 2016 WL 368086, at *7 (W.D.N.Y. Feb. 1, 2016) (citing *Cunningham v. Conway*, 717 F. Supp. 2d 339, 365 (W.D.N.Y. 2010) (citing N.Y. R. Ct. § 500.20(a)(2), (d); other citations omitted). Collateral review via a C.P.L. § 440.10 motion is foreclosed; the trial court would be required to deny Ground Three as previously determined on the merits on direct appeal.  *See Zacher*, 2016 WL 368086, at *7 (citing N.Y. CRIM PROC. LAW § 440.10(2)(a)).

Ground Three must be "deemed exhausted." *Grey*, 933 F.2d at 120–21. "[T]he procedural rule that leads to the constructive exhaustion" of Ground Three "also creates a procedural bar to this Court's review of the claim[s]." *Zacher*, 2016 WL 368086, at *7 (citing *Grey*, 933 F.2d at 121); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996).

To overcome the procedural default of Ground Three, Blocker "must show cause for the default and prejudice, or demonstrate that failure to consider the claim[s] will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)). "[T]he cause requirement is met if some objective factor, external to [the] [p]etitioner's defense, interfered with his ability to comply with the state's procedural rule." *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012).

"There is no doubt that ineffective assistance of counsel can serve as cause to excuse procedural default." *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016) (citing *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000)). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards*, 529 U.S. at 452.

As discussed above in connection with Ground One, Blocker does not have an exhausted and meritorious claim of ineffective assistance that can serve as cause to excuse the default of Ground Three. Absent evidence of "cause," the Court need not address the "prejudice" requirement. *See*, *e.g.*, *McCleskey v. Zant*, 499 U.S. 467, 502 (1991) (stating that because petitioner "lacks cause for failing to raise the [constitutional] claim in the first federal petition," it "need not consider whether he would be prejudiced by his inability to raise the alleged [constitutional] violation at this late date") (citation omitted).

Turning to the fundamental miscarriage of justice exception, the Court notes that it is limited to "'extraordinary case[s], where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); alteration in *Rivas*)). "To satisfy the [relevant] standard, a claim of actual innocence must be both 'credible' and 'compelling.'" *Id.* at 541 (quoting *House v. Bell*, 547 U.S. 518, 521, 538 (2006)).

"For the claim to be 'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup v*. Delo, 513 U.S.

298, 324 (1995); citing *House*, 547 U.S. at 537). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538). It is well established that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24 (1998). This "standard is demanding and permits review only in the extraordinary case." *House*, 547 U.S. at 538 (internal quotation marks and citations omitted).

In his Reply, Blocker asserts that he has demonstrated the fundamental miscarriage of justice exception because is "factually, actually innocent." ECF No. 30 at 9.  His actual innocence claim is detailed in an unsworn account of his actions on the night of the traffic stop. *Id.* at 9–15. Blocker asserts that he was at home watching television with his girlfriend and kids when Collins called and asked him for a ride to Rochester's west side. Blocker agreed and left his house at an unspecified time. He drove to Madison's apartment on Joseph Avenue and called Collins' cell phone to tell him that he (Blocker) was waiting outside. Within minutes, Collins and Madison got into Blocker's car. Madison and Blocker started chatting as they had not seen each other in a while. After a few minutes, Blocker told Madison that he had to drop Collins off and get home to his kids. At that point, Madison made Blocker aware that he was going with Collins to his destination.

On the way to drop off Collins and Madison, they made two stops—one at a store for Blocker to pick up diapers, baby wipes, and paper towels; and one on Avenue D during

which Collins got out and spoke to an older man he said was his father.  Blocker claims

he did not notice anything that would have suggested Collins and Madison were carrying

weapons or other contraband.

Regarding the traffic stop, Blocker asserts that his car was initially blocked in by a

white vehicle driven by a masked man with a female passenger who allegedly were

working in concert with the police. The police officers approached his car with guns drawn

and gave a signal to the people in the white car. As the white car drove away, Blocker

claims he heard an officer say, "If it were not for Linda Bloom; Pac-Tac, we would not

have caught these sons of bitches." ECF No. 30 at 15.

Blocker then relates that after he was arrested, RPD Investigators Houlihan and

Brennan told him that Collins had been under surveillance because he had an ongoing

feud with Terence Washington ("Washington"); that they (the investigators) knew that

Blocker was not involved in the feud; and that they needed Blocker's help in getting Collins

and Washington "off the streets, because they were crossing the line by shooting at old

church ladies['] houses that had nothing to do with their beef." To that end, Blocker says,

the investigators asked him to "give them a story with intent, that would suggest what

Collins and/or Madison planned to do with the recovered weapons." They promised him

that if he assisted them, he would not be charged. When Blocker replied that he did not

know Madison and Collins were carrying weapons, the investigators urged him to "just

make up a story." Blocker stated that he could not make up a story and "put himself or his

family in harms [sic] way," to which the investigators responded that "he would be charged

with the same and exact charges as Collins and Madison." ECF No. 30 at 15–16.

Blocker asserts that while they were both at the jail after being arrested, Madison apologized to him for having gotten him involved with the police. According to Blocker, Madison also told him that he had one gun in his waistline and one inside the sleeve of his coat when he got into Blocker's car. While Blocker was "inside of the store," Madison said he noticed a "strong physical presence of police" near Blocker's vehicle. Because the police appeared to be looking into Blocker's car, Madison "got nervous and took the gun out of his waistline and placed it in the glovebox." ECF No. 30 at 17.

While the foregoing allegations are arguably "new" since they were "not heard by the jury[,]" *Rivas*, 687 F.3d at 543, they are not "credible" because they lack any indicia of reliability. Blocker's Reply is unsworn, *see* ECF No. 30 at 43, and the allegations largely consist of hearsay without any corroboration. *See Atkins v. Chappius,* No. 1:13-CV-00956-CJS, 2020 WL 6264452, at *14 (W.D.N.Y. Oct. 23, 2020) (letter in support of petitioner's alibi lacked indicia of reliability because, although notarized, it was unsworn as well as uncorroborated by any other evidence) (citing *Barrientos v. Lee,* No. 14CV3207-LTS-JCF, 2015 WL 3767238, at *12 (S.D.N.Y. June 17, 2015) (purportedly exculpatory statement by former co-defendant made during an interrogation "lack[ed] several indicia of reliability: the statement was only informally memorialized in handwritten notes . . . and is uncorroborated by other evidence")), *appeal dismissed,* No. 20-3914, 2021 WL 2011197 (2d Cir. Apr. 13, 2021); *Lofland v. Horton*, No. 2:18-CV-13006, 2019 WL 2247791, at *8 (E.D. Mich. May 24, 2019) (witness's statement to police implicating third-party as shooter was hearsay and "thus presumptively unreliable for supporting an actual innocence claim"; it was "also 'entitled to little weight because [it was] unsworn'") (quoting *Bell v. Howes*, 701 F. App'x, 408, 412 (6th Cir. 2017) (unpublished op.) (citing

*Herrera v. Collins*, 506 U.S. 390, 417 (1993) (finding petitioner's actual innocence evidence to be "suspect" where it "consist[ed] of hearsay")).

While Blocker's failure to "meet the 'credible' prong of the [actual innocence] standard is a sufficient basis to find that he is not entitled to have his procedurally defaulted claims heard[,]" *Vickers v. United States,* No. 13-CR-0128-FPG, 2020 WL 6135859, at *5 (W.D.N.Y. Oct. 19, 2020) (citing *Diaz v. Bellnier,* 974 F. Supp. 2d 136, 146 (E.D.N.Y. 2013)), the Court also finds that his new evidence is not "compelling" proof of Blocker's innocence.

Blocker's allegations about how the traffic stop occurred, although consistent with Rosario's statement, do not "directly support[] [his] factual innocence by indicating either that he did not commit, or could not have committed, the crimes of conviction." *Hyman v. Brown*, 927 F.3d 639, 665 (2d Cir. 2019) (emphases removed). Instead, they constitute impeachment evidence that attacks the credibility of the police witnesses. *See Patterson v. Bartlett*, 56 F. App'x 762, 763 (9th Cir. 2002) (unpublished op.) (uncorroborated affidavits obtained post-conviction constituted impeachment evidence attacking the credibility of the victim and her mother and did not establish it was more likely than not that no reasonable juror would have convicted petitioner in light of the new evidence). Moreover, they are substantively relevant at most to the legality of the traffic stop, which was already litigated at the suppression hearing and was not at issue during trial.

The alleged statements by Investigators Houlihan and Brennan that they knew Blocker was "not involved in the feud" also do not "directly support[] petitioner's factual innocence." *Hyman*, 927 F.3d at 665.  At the outset, no one ever argued that Blocker was part of that feud. For instance, the prosecutor asserted at the sentencing hearing that the

sawed-off shotgun had been used in an earlier shooting directed at Washington's mother's house, but he clarified that he was "not saying Mr. Blocker participated in those events. . . ." S. 14–15. In addition, trial counsel acknowledged receipt of discovery and *Brady* materials stating that those earlier incidents involving Collins and Washington did not involve Blocker. S. 7.

Nonetheless, the fact that Blocker was not a participant in the Collins-Washington feud does not exonerate him of the offenses with which he was charged. As the prosecutor argued during his summation, the People were only required to prove the elements of the crimes, which did not include "what they were going to do with the guns" found in Blocker's car. Tr. 433; *see also* Tr. 432. Indeed, Collins was found guilty of the same charges as Blocker even though the jury never heard about the feud between him and Washington. In short, Blocker still could be guilty of criminally possessing the handgun and sawed-off shotgun even without any involvement in the feud between Collins and Washington.

Similarly, the investigators' alleged promise not to charge Blocker if he fabricated a story inculpating Collins and Washington does not "directly support [his] factual innocence." *Hyman*, 927 F.3d at 665. It is simply impeachment material, which "is a step removed from evidence pertaining to the crime itself" and "tends only to impeach the credibility of" the witness. *Calderon v. Thompson*, 523 U.S. 538, 563 (1998). For this reason, newly discovered impeachment evidence "will seldom, if ever" establish actual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992). Moreover, since the prosecutor did not utilize any of Blocker's statements to the police, Investigators Houlihan and

Brennan did not testify at trial. Thus, the defense had no need to impeach them, and this evidence was immaterial to the trial.

Because Blocker has not presented any new, reliable evidence that he is actually innocent of the crimes of which he was convicted, a miscarriage of justice will not occur if the Court declines to review Ground Three on the merits. Accordingly, it is dismissed as procedurally defaulted.

## VI.    The Weight of the Evidence Claim Is Not Cognizable (Ground Four)

Blocker reprises his argument, raised on direct appeal, that the verdicts for possessing each of the weapons was "against the weight of the evidence." *See*, *e.g.*, SR. 117 ("A verdict of not guilty would not have been unreasonable here since the proof that Mr. Blocker knowingly possessed the guns came from the automobile presumption. This Court should therefore engage in a *de novo* review of the evidence."); SR. 119 ("The guilty verdicts concerning the handgun were also against the weight of the evidence."); ECF No. 1, Ground Four (incorporating direct appeal arguments). Respondent argues that Ground Four asserts a purely state-law claim that is not cognizable on habeas review.

A claim that a conviction is against the weight of the evidence originates from C.P.L. § 470.15(5), which permits an appellate court to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." In *People v. Bleakley*, 69 N.Y.2d 490 (1987), the New York Court of Appeals noted that attacks on a verdict based on the weight of the evidence are different from those based on the legal sufficiency of the evidence. *Id.* at 495. Specifically, the "weight of the evidence" argument is a pure state law claim

grounded in C.P.L. § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. *Id.*

Here, Blocker only cited New York state case law involving the exercise of the appellate court's unique factual review power under C.P.L. § 470.15(5) to, "like the trier of fact below, . . . weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony[.]" *Bleakley*, 69 N.Y.2d at 495 (internal quotation marks and citations omitted). The Appellate Division construed Blocker's appeal as seeking reversal of his conviction because it was against the weight of the evidence under New York law, not because it was based on legally insufficient evidence. *See Blocker*, 132 A.D.3d at 228-29 (citing intermediate appellate cases for their weight-of-the-evidence holdings). The Appellate Division "conclude[d] that the verdict is not against the weight of the evidence[,]" since "[t]he jury was entitled to reject the evidence that the weapons recovered from the vehicle were possessed solely by one of the codefendants, and to find, based upon the automobile presumption that defendant knowingly possessed those weapons[.]" *Id.*

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citations and footnote omitted). The Supreme Court has "stated many times" that 'federal habeas corpus relief does not lie for errors of state law.'" *Id.* at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); citation omitted). Since "the argument that a verdict is against the weight of the evidence states a claim under state law," it "is not cognizable on habeas corpus[.]" *McKinnon v. Sup't, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) (unpublished op.) (collecting cases).

**CONCLUSION**

For the foregoing reasons, the request for a writ of habeas corpus is denied, and the Petition, ECF No. 1, is dismissed. Because Blocker has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

HON. CHARLES J. SIRAGUSA
United States District Judge

Dated:        February 2, 2022
              Rochester, New York.